J-A09021-15

2015 PA Super 129

| | | |
|---|---|---|
| U.S. BANK, N.A., AS TRUSTEE SUCCESSOR IN INTEREST TO BANK OF AMERICA, N.A., AS TRUSTEE AND SUCCESSOR BY MERGER TO LaSALLE BANK, N.A., AS TRUSTEE FOR WAMU MORTGAGE PASSTHROUGH CERTIFICATES SERIES 2007-OA2 TRUST, | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| CHRISTINE PAUTENIS, | : : | |
| Appellee | : | No. 2109 EDA 2014 |

Appeal from the Judgment dated July 14, 2014,
Court of Common Pleas, Delaware County,
Civil Division at No. CV-12-006771

BEFORE: BOWES, DONOHUE and STABILE, JJ.

OPINION BY DONOHUE, J.: **FILED MAY 29, 2015**

U.S. Bank, N.A. ("U.S. Bank") appeals from the July 14, 2014 judgment entered by the Delaware County Court of Common Pleas finding in favor of Christine Pautenis[1] ("Home Owner") in this mortgage foreclosure action[2] and dismissing its complaint with prejudice. On appeal, U.S. Bank

---

[1] Prior to trial, Christine Pautenis married and changed her name to Christine Banas. Her maiden and married names are used interchangeably throughout the notes of testimony.

[2] U.S. Bank filed its notice of appeal "from the [v]erdict entered in the matter on the 3rd day of March, 2014 … and the [o]rder dated June 18, 2014, dismissing [U.S. Bank's] [m]otion for [p]ost-[t]rial [r]elief[.]" Notice of Appeal, 7/23/14. It is well-settled law, however, that "[a]n appeal to this

challenges the denial of its post-trial motions as untimely; the verdict in favor of Home Owner based on allegedly erroneous evidentiary rulings by the trial court; and the trial court's dismissal of U.S. Bank's complaint with prejudice.[3]  Upon review, we reverse the trial court's denial of U.S. Bank's post-trial motion as untimely; in all other respects, we affirm.

As summarized by the trial court:

> The undisputed facts surrounding the origination of this law suit [sic] are that [Home Owner], borrowed the sum of $187,000.00 from Washington Mutual Bank, FA ("WaMu") to finance the purchase of the subject property situated at 257 Windermere Avenue, Lansdowne, PA[,] pursuant to a deed recorded on May 22, 2007 in Book 4106, Page 940 in the Office of the Recorder of Deeds of Delaware County, PA. On January 25, 2007, [Home Owner] executed and delivered a promissory note and, to secure the obligation under the note, a purchase money mortgage to WaMu, the latter instrument having been subsequently recorded on May 22, 2007 in the Office of the Recorder of Deeds of Delaware County, PA[,] in Book 4106, Page 945. The terms of remuneration of the [n]ote required [Home Owner] to make initial monthly payments of $788.40 commencing on March 1, 2007, and continuing each month thereafter until the maturity date of February 1, 2037. [Home Owner] admittedly stopped making

---

Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions."  **Fanning v. Davne**, 795 A.2d 388, 391 (Pa. Super. 2002) (citation omitted).  We therefore amended the caption accordingly.

[3]  As discussed later in this Opinion, the trial court's dismissal of the complaint, **after trial and a verdict**, is a procedural anomaly.  After the case was tried to verdict, the claims asserted in the complaint were adjudicated in the trial.  Thus, we treat the trial court's disposition solely as a verdict in favor of Home Owner and refer to it as such.

her required mortgage payments on or about September 1, 2011, and following her subsequent failure to cure the default, [U.S. Bank] commenced this action in mortgage foreclosure on August 8, 2012.[FN]1

_____

[FN]1 [Home Owner]'s [n]ote and [m]ortgage in favor of WaMu were assigned, on May 25, 2008, by the Federal Deposit Insurance [Corporation] ["FDIC"] to JPMorgan Chase Bank, N.A. ["Chase"], from whence it was reportedly assigned to [U.S. Bank].

Trial Court Opinion, 9/29/14, at 3 (footnote in the original).

Home Owner filed preliminary objections to U.S. Bank's complaint on November 7, 2012. Following receipt of U.S. Bank's response thereto, the trial court denied the preliminary objections on February 21, 2013 and ordered Home Owner to file an answer to the complaint within twenty days of the order. Home Owner filed an answer and new matter on March 21, 2013. U.S. Bank filed a reply to the new matter on April 8, 2013. On October 22, 2013, U.S. Bank filed a motion for summary judgment, which the trial court denied on December 6, 2013.

The one-day bench trial took place on February 25, 2014. At trial, the trial court sustained Home Owner's objection to the admission of U.S. Bank's trial exhibits P-2 through P-8. These exhibits included the adjustable rate note; the mortgage; the assignment of the mortgage from Chase to U.S. Bank; the payment history report compiled by Select Portfolio Servicing

("SPS");[4] the default notice allegedly sent to Home Owner by Chase; a calculation of the current payoff of the loan through February 25, 2014; and the original version of the note. The trial court found that the documents "totally lack trustworthiness," and excluded the exhibits from evidence. N.T., 2/25/14, at 212.

The trial court issued its verdict on March 3, 2014, finding in favor of Home Owner. The prothonotary sent notice of the verdict to the parties on March 5, 2014. U.S. Bank filed a motion for post-trial relief on March 17, 2014, which the trial court dismissed as untimely on June 18, 2014. Judgment was entered on July 14, 2014. Thereafter, U.S. Bank filed its notice of appeal, followed by a court-ordered concise statement of errors complained of on appeal. U.S. Bank now raises the following issues for our review, which we reordered for ease of disposition:

1. Whether the [t]rial [c]ourt erred as a matter of law by striking and dismissing the [m]otion for [p]ost-[t]rial [r]elief as untimely and/or refusing to accept the [m]otion where it was filed on the tenth day following notice by the [p]rothonotary of the entry of the [v]erdict following a non-jury trial?

2. Whether the [t]rial [c]ourt committed prejudicial error and abused its discretion in refusing to take judicial notice of [Chase]'s ownership of the [n]ote and [m]ortgage and of [Chase]'s authority to assign the [m]ortgage and [n]ote to U.S. Bank?

---

[4] SPS services Home Owner's mortgage on U.S. Bank's behalf pursuant to a limited power of attorney.

- 4 -

3. Whether the [t]rial [c]ourt's refusal to admit into evidence the copies or original of the [n]ote is prejudicial error and [an] abuse of discretion despite [Home Owner]'s admission that she signed at least one of the copies?

4. Whether the [t]rial [c]ourt's refusal to admit into evidence the [d]efault [n]otice sent to [Home Owner] is prejudicial error and [an] abuse of discretion[?]

5. Whether the [t]rial [c]ourt committed prejudicial error and abused its discretion by excluding evidence of [Home Owner]'s indebtedness and failing to deem admitted [Home Owner]'s indebtedness as pleaded and proven by [U.S.] Bank?

6. Whether the [t]rial [c]ourt erred as a matter of law by dismissing the case "with prejudice[]"[?]

U.S. Bank's Brief at 7-8.

**1. Timeliness of Post-Trial Motion**

As its first issue on appeal, U.S. Bank asserts that the trial court erroneously found that its post-trial motion was untimely. *Id.* at 13-14. In its written opinion pursuant to Pa.R.A.P. 1925(a), the trial court stands by its decision to dismiss the post-trial motion as untimely, but states that "the issue of the late filing … is [now] moot," as this Court declined to quash the appeal and the trial court constructed a written opinion addressing the issues raised on appeal.[5] Trial Court Opinion, 9/29/14, at 2. The trial court

---

[5] On August 20, 2014, this Court issued an order requiring U.S. Bank to show cause why the appeal should not be dismissed for failure to preserve any issues for appellate review based upon the allegedly untimely filing of its post-trial motion. *See* Order, 8/20/14. U.S. Bank responded on September

- 5 -

contends that the proper course of action is for this Court to remand the case for the trial court to decide the issues raised in the motion, as "there can be no direct appeal from a [v]erdict[.]" *Id.* The trial court nonetheless addressed all of the issues raised on appeal, which were also included in U.S. Bank's post-trial motion.

Our review of the record reveals that U.S. Bank timely filed its post-trial motion. Rule 227.1(c) of the Pennsylvania Rules of Civil Procedure requires the filing of post-trial motions within ten days of the filing of the decision in a nonjury trial. Pa.R.C.P. 227.1(c)(2). As the trial court recognizes, this ten-day period does not commence until the prothonotary sends notice of the decision to the parties. *See* Trial Court Opinion, 9/29/14, at 2; *Carr v. Downing*, 565 A.2d 181, 181 (Pa. Super. 1989) ("the time period for purposes of Rule 227.1 did not commence until notice of the adjudication was sent to the parties"); *see also Brednick v. Marino*, 644 A.2d 199, 200 (Pa. Super. 1994) (same). The trial court asserts, however, that because U.S. Bank did not file its post-trial motion until twelve days after the prothonotary sent notice to the parties of the verdict, the motion was untimely and properly dismissed. Trial Court Opinion, 9/29/14, at 2. This is incorrect, as the tenth day following the provision of notice of the trial court's verdict – March 15, 2014 – fell on a Saturday. The law is

_____

2, 2014, resulting in our discharge of the rule and ordering the appeal to proceed, subject to this panel's review of the timeliness of the post-trial motion. *See* Order, 9/18/14.

- 6 -

clear: "Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation." Pa.R.C.P. 106(b). Therefore, U.S. Bank's post-trial motion, which was filed the following Monday, was timely.

We further disagree with the trial court that remand is necessary in this case. In its written opinion, the trial court states that it believes U.S. Bank's "post-trial contentions are utterly lacking in merit," and only recommends remand in "an abundance of judicial caution" to provide U.S. Bank with "a final and appealable order." Trial Court Opinion, 9/29/14, at 23 (citing *Diamond Reo Truck Co. v. Mid-Pac. Indus., Inc.*, 806 A.2d 423 (Pa. Super. 2002)). This Court has made clear, however, that it is the failure to timely **file** post-trial motions that results in waiver of issues raised on appeal, not the trial court's failure to consider the merits thereof. *D.L. Forrey & Associates, Inc. v. Fuel City Truck Stop, Inc.*, 71 A.3d 915, 919 (Pa. Super. 2013).

Here, U.S. Bank timely filed post-trial motions. Although the trial court initially failed to consider the contentions raised therein, the trial court ultimately did so in its opinion authored for purposes of appeal. This is the functional equivalent of a case involving the dismissal of post-trial motions by operation of law, and in such cases, the trial court does not address the contentions raised in the post-trial motion, if at all, until it authors its

1925(a) opinion. *See* Pa.R.C.P. 227.4(1)(b) (authorizing the entry of judgment, upon praecipe of a party, if the trial court does not enter an order disposing of timely filed post-trial motions within 120 days of the filing of the motion). Furthermore, this is not an appeal from a verdict as the trial court suggests, but an appeal following the entry of judgment. *See* Trial Court Opinion, 9/29/14, at 2; *supra*, n.2.

"[T]he twofold purpose of post-trial motions: (1) to afford the trial court in the first instance, the opportunity to correct asserted trial errors[] and (2) to clearly and narrowly frame issues for appellate review," *Diamond Reo Truck Co.*, 806 A.2d at 430, have been met in this case. There is no purpose in remanding the case for the trial court to again address the issues raised in the motion. We therefore proceed to our review of the issues raised on appeal.

## 2. Judicial Notice

U.S. Bank's second issue on appeal alleges error based on the trial court's failure to take judicial notice of Chase's acquisition of Home Owner's mortgage pursuant to the FDIC's takeover of WaMu and subsequent transfer of "substantially all" of WaMu's assets and liabilities to Chase. U.S. Bank's Brief at 17-20. We review challenges to the trial court's evidentiary rulings according to the following standard:

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the

trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Phillips v. Lock***, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

Rule 201 of the Pennsylvania Rules of Evidence governs judicial notice, and states, in relevant part, as follows:

**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

**(c) Taking Notice.** The court:

(1) may take judicial notice on its own; or

(2) must take judicial notice if a party requests it **and the court is supplied with the necessary information.**

Pa.R.E. 201(b)-(c) (emphasis added).

The record reflects that without presenting supporting evidence of any kind, counsel for U.S. Bank stated, "It's public record that [WaMu] was

seized and shut down by the FDIC[, a]nd all of those assets were taken from [WaMu] and taken over by [Chase]. … We would ask that since these are public records and generally common knowledge that the [c]ourt take judicial notice of the same." N.T., 2/25/14, at 52-53. The trial court responded by stating that the information was not within its common knowledge and refused to take judicial notice of the transfer of WaMu's assets and liabilities to Chase, in particular, the transfer of Home Owner's mortgage loan from WaMu to Chase. *Id.* at 53.

In its brief on appeal, U.S. Bank includes web addresses[6] that detail the FDIC's takeover of WaMu and transfer of "all mortgage servicing rights

---

[6] Specifically, U.S. Bank cites:

- https://www.fdic.gov/news/news/press/2008/pr08085.html;
- http://www.wsj.com/news/articles/SB122238415586576687; and
- https://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf.

Although the Commonwealth Court has, on several occasions, taken judicial notice of information appearing on a website, *see, e.g., Hill v. Dep't of Corr.*, 64 A.3d 1159, 1165 (Pa. Commw. Ct. 2013) (taking judicial notice of the Department of Corrections' "policies and handbooks" appearing on its website), we are not bound by these decisions. *Wells Fargo Bank N.A. v. Spivak*, 104 A.3d 7, 16 (Pa. Super. 2014) (stating that the Superior Court is not bound by decisions of the Commonwealth Court). Neither this Court nor our Supreme Court has taken judicial notice of information appearing on a website. *See, e.g., Commonwealth v. Brown*, 839 A.2d 433, 435-37 (Pa. Super. 2003) (finding no abuse of discretion in the trial court's refusal to take judicial notice of the distance between two locations as stated on the website www.mapquest.com, as the information was not inherently reliable). As this information was not presented before the trial court, however, we need not resolve the question of whether the information on the cited websites are subject to judicial notice.

and obligations" to Chase.[7]  **See** U.S. Bank's Brief at 19-20.  Our review of the record reveals that none of this information was presented at trial. Indeed, apart from the bare assertion of counsel that the transfer was "public record," U.S. Bank failed to supply the trial court with any information for it to conclude that the fact requested was subject to judicial notice.  **See** N.T., 2/25/14, at 51-54.  As such, we discern no abuse of discretion in the trial court's refusal to take judicial notice as requested.

Moreover, even if the trial court abused its discretion by failing to take judicial notice, U.S. Bank would not be entitled to relief.  As U.S. Bank acknowledges, this issue relates to its standing to bring this action in foreclosure.  U.S. Bank's Brief at 17-18; U.S. Bank's Reply Brief at 3.  The trial court, however, did not decide this case based upon U.S. Bank's lack of standing.  **See** Trial Court Opinion, 9/29/14, at 21 (stating that U.S. Bank had standing and "proof of the chain of custody of the mortgage assignment was unnecessary").[8]  Rather, the trial court entered a verdict in favor of

---

[7]  U.S. Bank also cites to **In re Stewart**, 473 B.R. 612 (Bankr. W.D. Pa. 2012), *aff'd*, 2013 WL 4041963 (W.D. Pa. Aug. 8, 2013) (unpublished memorandum), for the proposition that "other courts in Pennsylvania have taken judicial notice of **the documents** relating to the FDIC receivership of WaMu and the subsequent purchase of WaMu's assets by [Chase]."  U.S. Bank's Brief at 20 (emphasis added).  That case bears no relation to the case at bar, as in **In re Stewart**, not only did Chase present documents in support of its request that the bankruptcy court take judicial notice of Chase's purchase of WaMu, but the debtor consented to the request for judicial notice.  **See In re Stewart**, 473 B.R. at 618 nn. 2-3.

[8]  Although U.S. Bank's lack of standing was not the basis of the trial court's decision, we note that it is not clear that U.S. Bank proved that it had

Home Owner based upon its finding that U.S. Bank failed to satisfy its burden of proving the amount owed by Home Owner on the mortgage loan. *Id.* The law is clear: "[I]n order for a ruling on the admissibility of evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." ***Knowles v. Levan***, 15 A.3d 504, 507 (Pa. Super. 2011) (citation omitted); ***see also Peled v. Meridian Bank***, 710 A.2d 620, 626 (Pa. Super. 1998) ("To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining. An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the [fact-finder]'s judgment."). As U.S. Bank suffered no prejudice as a result of the trial court's refusal to take judicial

_____

standing to bring this mortgage foreclosure action. As stated infra, the trial court excluded the mortgage from evidence. In addition, there were several copies of the note produced at trial. Home Owner testified that only one bore her signature, and that version of the note was not indorsed either to U.S. Bank or in blank. N.T., 2/25/14, at 149-50. Pursuant to our holding in ***JP Morgan Chase Bank, N.A. v. Murray***, 63 A.3d 1258 (Pa. Super. 2013), if the purported mortgagee establishes that it holds the original note, indorsed to it or in blank, it is entitled to enforce the note even in the face of questions regarding the chain of possession. *Id.* at 1267. If the purported mortgagee is unable to establish that it is the holder of the note or that the note is indorsed to it or in blank, the purported mortgagee may be required to provide proof of the chain of possession to be entitled to proceed in the foreclosure action. *Id.* at 1267-68. Home Owner does not challenge on appeal the trial court's finding that U.S. Bank proved that it had standing to bring the foreclosure action, and our Supreme Court has made clear that we may not question a party's standing sua sponte. ***See Rendell v. Pennsylvania State Ethics Comm'n***, 983 A.2d 708, 717 (Pa. 2009) ("the matter of standing is not available to be raised by a court sua sponte") (italics omitted). Therefore, we do not delve further into this issue.

notice of the transfer of Home Owner's mortgage and note to Chase, this issue does not warrant relief.

### 3. Exclusion of Promissory Note

Next, U.S. Bank asserts that the trial court erred by refusing to admit into evidence copies of the note submitted at trial.[9] U.S. Bank's Brief at 31-34. Once again, U.S. Bank's only claim of prejudice relates to its ability to establish that it had standing to bring this action in mortgage foreclosure. *Id.* at 33-34; U.S. Bank's Reply Brief at 12. Assuming solely for the sake of analysis that the trial court's ruling was erroneous, since the trial court did not rule against U.S. Bank based on its lack of standing, no relief is due. *See* Trial Court Opinion, 9/29/14, at 21; *Knowles*, 15 A.3d at 507; *Peled*, 710 A.2d at 626.

---

[9] The trial court was presented with multiple versions of the mortgage and the note, with varying signatures, initials, witnesses, and handwriting. *See* Complaint 8/8/12, at Exhibits A, C; Trial Exhibit P-3; Trial Exhibit D-5. Home Owner testified that she signed only one version of the note, and identified her signature on the note that did not bear an indorsement. N.T., 2/25/14, at 149-50. U.S. Bank presented Trial Exhibit P-8, which was reported to be the original note with an "ink signature," *id.* at 127, but never elicited testimony as to whether the "ink signature" was that of Home Owner or that this document contained an indorsement in U.S. Bank's name or in blank. Trial Exhibit P-8 was not included in the certified record on appeal. Neither U.S. Bank's corporate representative witness nor its counsel could explain why there were different versions of the note. *Id.* at 128-29, 212. As stated above, the trial court found that the documents "totally lack trustworthiness," and sustained Home Owner's objection to their admission. *Id.* at 212. The trial court did, however, admit into evidence an unindorsed copy of the note, included in Home Owner's Trial Exhibit D-5.

**4. Exclusion of Default Notice**

In its fourth issue, U.S. Bank claims that the trial court abused its discretion by refusing to admit into evidence the notice of default and mortgage acceleration it allegedly sent to Home Owner.[10] U.S. Bank's Brief at 34-35. U.S. Bank includes no explanation of how, if at all, it was prejudiced by the trial court's exclusion of this document. "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Krauss v. Trane U.S. Inc.***, 104 A.3d 556, 584 (Pa. Super. 2014) (quoting ***Irwin Union Nat. Bank and Trust Co. v. Famous***, 4 A.3d 1099, 1103 (Pa. Super. 2010)). As U.S. Bank failed to establish that this allegedly erroneous evidentiary ruling prejudiced it, we will not disturb the trial court's decision on this basis. ***See Knowles***, 15 A.3d at 507; ***Peled***, 710 A.2d at 626.

**5. Exclusion of Evidence of Amount of Debt**

U.S. Bank correctly states that proof of the amount of indebtedness is an "essential element of a claim in mortgage foreclosure." U.S. Bank's Brief at 21; ***see*** Pa.R.C.P. 1147(a)(5)-(6) (requiring that a complaint in mortgage foreclosure include, inter alia, "(5) an itemized statement of the amount due[] and (6) a demand for judgment in the amount due."). "The sole purpose of the judgment obtained through an action of mortgage foreclosure

---

[10] The record reflects that the notice, sent by Chase, was sent to the mortgaged property, and Home Owner testified that she never resided at that address. ***See*** Trial Exhibit P-6; N.T., 2/25/14, at 145.

is to effect a judicial sale of the mortgaged property," as the judgment is de terris (against the land), not in personam. *Meco Realty Co. v. Burns*, 200 A.2d 869, 871 (Pa. 1964). The precise amount due on a mortgage is therefore "essential," as "[a] sheriff could not possibly distribute the proceeds of a foreclosure sale among the various parties in interest without knowing the exact extent of the claim of the foreclosing mortgagee." 4 Goodrich Amram 2d § 1147(6):1 (Amram commentary).[11]

---

[11] We note, however, that U.S. Bank's reliance upon *Cunningham v. McWilliams*, 714 A.2d 1054, 1056-57 (Pa. Super. 1998), for the proposition that the mortgagee must prove the amount owed by the mortgagor on the loan is improper, as that case states precisely the opposite:

> In an action for mortgage foreclosure, the entry of summary judgment is proper if the mortgagors admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount. *Landau v. Western Pennsylvania National Bank*, [] 282 A.2d 335, 340 ([Pa.] 1971). **This is so even if the mortgagors have not admitted the total amount of the indebtedness in their pleadings.** *Id. See generally* 22 Standard Pennsylvania Practice 2d § [121:72] (discussing motions for summary judgment in a foreclosure action).

*Cunningham*, 714 A.2d at 1057 (emphasis added). The facts of *Cunningham* are readily distinguishable from the case at bar. The mortgage in that case was a fixed rate mortgage and the mortgagors admitted that they defaulted on the mortgage, failed to pay interest from a specified date, and that the recorded mortgage was in the amount stated by the mortgagee in its complaint. *Id.* Thus, despite the mortgagors' denial in their answer of the amount of indebtedness claimed by the mortgagee, that figure was a simple calculation, readily ascertainable and indisputable based upon the terms of the mortgage. *See id.* As such, summary judgment was proper. The mortgage in the case at bar, on the other hand, was an

U.S. Bank alleges error by the trial court based upon its failure to "deem admitted" the amount owed by Home Owner on the mortgage loan and the court's exclusion of the evidence it presented to establish the amount of Home Owner's indebtedness. U.S. Bank's Brief at 21-31. As to its claim that the amount of indebtedness should have been "deemed admitted" by Home Owner, U.S. Bank asserts that this result is required because of Home Owner's failure to specifically deny the averment concerning the amount of the indebtedness contained in U.S. Bank's complaint. *Id.* at 21-23. U.S. Bank relies upon the holding of this Court that a borrower's general denial in an answer to a complaint in a mortgage foreclosure action is considered an admission, as the borrower and the

---

adjustable rate mortgage, which did not permit a simple calculation of the amount due (as evidenced by the testimony provided by U.S. Bank's witness, discussed infra). Therefore, despite Home Owner's admission that the mortgage was in default, she failed to make any payments on the obligation (which would include interest), and the mortgage was recorded in the amount of $187,000, *see* N.T., 2/25/14, at 151, 152; Trial Exhibit D-5, this did not permit the entry of judgment in U.S. Bank's favor in the absence of proof of the amount owed by Home Owner on the mortgage loan.

The ***Landau*** case, upon which the ***Cunningham*** Court relied, was an anomalous case and is likewise distinguishable from the case at bar. In ***Landau***, the bank voluntarily subordinated its interest in the property to the mortgagor's lessee. ***Landau***, 282 A.2d at 337. The bank, as the mortgagee in possession, was collecting rent, expending money for capital improvements, and paying taxes. ***Id.*** at 339. Therefore, it was unknown at the time of the foreclosure proceeding what amount was owed to the bank; an accounting was required prior to a sheriff's sale. ***See id.*** at 339, 340. Furthermore, a judicial sale of the property was not immediately contemplated, rendering it unnecessary to determine at the time of the foreclosure proceeding the exact amount due to the bank. ***See id.*** at 340; ***see also Meco Realty Co.***, 200 A.2d at 871.

mortgage company are the only entities that would have sufficient information upon which to base a specific denial of the averments. ***Id.*** at 22 (citing ***First Wisconsin Trust Co. v. Strausser***, 653 A.2d 688, 692 (Pa. Super. 1995)). The trial court found that Home Owner did not and could not admit to the amount of indebtedness alleged in U.S. Bank's complaint. Trial Court Opinion, 9/29/14, at 21.

The record reflects that in its complaint, U.S. Bank included the following averment:

> 9. The following amounts are due as of May 7, 2012:
>
> | | |
> |---|---|
> | Principal Balance Due | $189,312.78 |
> | Interest Currently Due and Owing at a variable rate | |
> | From August 1, 2011 through May 7, 2012 | $5,759.09 |
> | Late Charges | $298.92 |
> | Escrow Advances | $3,144.17 |
> | Property Inspection | $144.00 |
> | **TOTAL** | $198,658.96 |

Complaint, 8/8/12, ¶ 9. Home Owner's answer states, in relevant part:

> By way of further answer, [Home Owner] den[ies] any allegation which calls for amounts of money claimed by [U.S. Bank], for which after reasonable investigation, answering [Home Owner] [is] without knowledge or information to form a believe as to the truth or falsity of [U.S. Bank]'s allegation regarding the alleged amounts due referred to in [U.S. Bank]'s [c]omplaint and the allegation is therefore denied.

Defendant's Answer and New Matter to Plaintiff's Complaint, 3/21/13, ¶ 9.

U.S. Bank is correct that in ***First Wisconsin Trust Co.*** this Court held that "in mortgage foreclosure actions, general denials by mortgagors that

they are without information sufficient to form a belief as to the truth of averments as to the principal and interest owing must be considered an admission of those facts." **First Wisconsin Trust Co.**, 653 A.2d at 692. This holding was derived from two sources: (1) our prior decision in **New York Guardian Mortgage Corp. v. Dietzel**, 524 A.2d 951, 952 (Pa. Super. 1987), wherein this Court stated, "Unquestionably, apart from [the mortgagee], [the mortgagors] are the only parties who would have sufficient knowledge on which to base a specific denial," and (2) Rule 1029 of the Pennsylvania Rules of Civil Procedure, which states, in relevant part:

> (b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivision (c) of this rule, shall have the effect of an admission.
>
> (c) A statement by a party that after reasonable investigation the party is without knowledge or information sufficient to form a belief as to the truth of an averment shall have the effect of a denial.
>
> *Note:* Reliance on subdivision (c) does not excuse a failure to admit or deny a factual allegation when it is clear that the pleader must know whether a particular allegation is true or false. See **Cercone v. Cercone**, 254 Pa.Super. 381, 386 A.2d 1 (1978) [(en banc)].

Pa.R.C.P. 1029(b)-(c), *Note*.

Both **First Wisconsin Trust Co.** and **New York Guardian Mortgage Corp.** involved appeals from summary judgment decisions. As such, the

- 18 -

borrowers presented no evidence to support a finding that they were unable to ascertain the amount owed on their loans. ***See Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.***, 106 A.3d 27, 34 n.5 (Pa. 2014) ("A court of original jurisdiction may grant summary judgment only when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law."). In contrast, in the case at bar, Home Owner presented evidence at trial[12] that she was unable to determine the amount due to U.S. Bank on the loan. Attorney Perry Liss testified that Home Owner retained him in 2011 or 2012 to send a qualified written request[13] ("QWR") to Chase to obtain information

---

[12] U.S. Bank does not claim as error on appeal the trial court's denial of its motion for summary judgment, which was based in part on Home Owner's failure to specifically deny the allegations regarding the amount due on the mortgage. Arguably, absent any additional evidence in the summary judgment record, Home Owner's answer to this averment would have constituted an admission at the summary judgment phase.

[13] Section 2605 of the Real Estate Settlement Procedures Act defines a qualified written request as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the

about her mortgage. N.T., 2/25/14, at 172-73. Attorney Liss sent the QWR on February 16, 2012, "disputing the validity of the current debt [Chase] claim[s] that [Home Owner] owes," and requesting "an accounting of [Home Owner]'s mortgage loan from its inception until the present date." Trial Exhibit D-3. Chase responded by sending, inter alia, what was purportedly a detailed transaction history regarding Home Owner's loan from March 1, 2007 through March 29, 2012. The document, however, only included transactions dating back to November 6, 2008, at which time the document indicates that the principal balance of the loan had inexplicably increased from $187,000 (the original amount of the mortgage loan, as stipulated by the parties)[14] to $195,961.66. **See** Trial Exhibit D-5; N.T., 2/25/14, at 151. Furthermore, the payment history report presented by U.S. Bank at trial only included transactions on the loan beginning on February 1, 2008, at which time the principal balance was reportedly $193,103.71, again with no explanation for the increase from the original loan amount of $187,000.

---

> servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B) (bold in the original).

[14] As stated supra, the trial court admitted into evidence Trial Exhibit D-5, which contained an unindorsed version of the note and a copy of the mortgage. This provided information regarding the original amount of the mortgage loan and that it was subject to an adjustable rate of interest. **See** Trial Exhibit D-5. At trial, Home Owner stipulated that the indorsed and unindorsed versions of the note presented before the trial court contained identical terms. N.T., 2/25/14, at 151.

N.T., 2/25/14, at 141-42; **see also** Trial Exhibit P-5.[15]  Home Owner, however, testified that she "made every payment in full" on this adjustable rate mortgage until she defaulted on the loan, N.T., 2/25/14, at 152, which would have resulted in a decrease, not an increase, in the amount of principal owed.  The trial court found Home Owner's testimony credible. **See** Trial Court Opinion, 9/29/14, at 18, 21.

The record supports the trial court's finding that Home Owner did not have sufficient knowledge upon which to base a specific denial as to the amount owed on the loan.  Therefore, pursuant to Rule 1029(b) and (c), Home Owner's statement in her answer that she was unable to determine the truth or falsity of the amount of indebtedness claimed by U.S. Bank in its complaint does not have the effect of an admission.  **See** Pa.R.C.P. 1029(b)-(c).

We now turn to U.S. Bank's argument that the trial court abused its discretion by excluding the evidence it presented of the amount owed on the loan by Home Owner.  First, relying on the obligation of consumers to challenge debt amounts as set forth in the Debt Collection Practices Act, 15 U.S.C. § 1692g(a)(3), U.S. Bank asserts that Home Owner failed to dispute the amount of the debt within thirty days of SPS taking over servicing responsibilities of the loan.  According to U.S. Bank, this is "circumstantial

---

[15]  The trial court refused to admit this exhibit for the purpose of establishing the amount of indebtedness.  It was, however, relevant to its decision not to impute an admission upon Home Owner as to the amount due on the loan.

evidence that [Home Owner] does not, in fact, have any basis for disputing the amount of the debt claimed by [U.S.] Bank." U.S. Bank's Brief at 24. U.S. Bank states that "this conclusion is inescapable" because Home Owner did not dispute the amount of the debt claimed in the complaint and did not testify that the amount owed was incorrect. *Id.* at 24-25. Our review of the record reveals that U.S. Bank never presented this argument before the trial court and has therefore waived it for purposes of appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Butler v. Charles Powers Estate ex rel. Warren*, 65 A.3d 885, 896 (Pa. 2013).

Even if not waived, the argument is meritless. Section 1692g of the Debt Collection Practices Act provides, in relevant part, as follows:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> **(1)** the amount of the debt;
>
> **(2)** the name of the creditor to whom the debt is owed;
>
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability

> The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

15 U.S.C.A. § 1692g (bold in the original). There is no indication in the record that upon acquiring Home Owner's mortgage and note, either U.S. Bank or SPS sent Home Owner a written notice to validate the amount owed as required by section 1692g(a). Therefore, Home Owner would have had no reason to send a letter contesting the amount owed pursuant to sections 1692g(a)(3) and (b). Furthermore, as discussed below, U.S. Bank failed to present admissible evidence of the amount of Home Owner's indebtedness. As such, Home Owner had nothing to dispute in her testimony at trial.

At trial, U.S. Bank attempted to establish the amount of the indebtedness based upon the testimony of KaJay Williams ("Williams"), a mediation specialist with SPS, who explained the manner by which SPS transferred loan information from Chase into its computer system. Relying upon **Commonwealth Fin. Sys. v. Smith**, 15 A.3d 492 (Pa. Super. 2011) ("**CFS**"), the trial court excluded the evidence. Trial Court Opinion, 9/29/14, at 15, 19-21. U.S. Bank contends that this was error, as **CFS** is inapposite to the case at bar. U.S. Bank's Brief at 25-31.

**CFS** involved an action to collect a credit card debt brought by CFS, which had purchased the debt from NCOP Capital, Inc., which had itself purchased the debt from Citibank, the original holder of the debt. **CFS**, 15

A.3d at 493-94. CFS, through its corporate representative, attempted to enter into evidence the following:

(a) two monthly billing statements: the first issued on February 25, 2002, reflecting receipt of a payment posted on February 7, 2002, asserting a payment due of $44.00 and a balance of $2,257.01 as of March 20, 2002; the second issued on March 26, 2002, reflecting a late fee of $35.00 on a past due payment (Complaint Exhibit A; Trial Exhibit P–2);

(b) an unsigned, standard form copy of a 1996 "Citibank Card Agreement," issued seven years after Ms. Smith's Citibank account was opened, bearing no direct relationship to Ms. Smith's account, and reflecting 1996/1997 interest rates (Complaint Exhibit B; Trial Exhibit P–1);

(c) a "Bill of Sale, Assignment and Assumption Agreement" dated July 14, 2004, between Citibank and NCOP Capital, Inc. ("NCOP"), wherein Citibank sold to NCOP, its successors and assigns, "the Accounts described in Section 1.2 of the Agreement," including Ms. Smith's account (Trial Exhibit P–3);

(d) a "Bill of Sale, Assignment and Assumption Agreement" dated July 19, 2004 between NCOP and CFS, wherein NCOP sold to CFS, its successors and assigns "the Accounts described in Section 1.2 of the Agreement," including Ms. Smith's account (Trial Exhibit P–4).

(d) a notarized affidavit of Michael Chiodo, an employee of NCOP, dated September 24, 2004, which referenced Ms. Smith's account and her Social Security Number in the heading and provided as follows:

Michael Chiodo, being sworn, deposes and says that the affiant making this affidavit is an employee of NCO Portfolio Management, Inc.;

- 25 -

> it's [sic] Subsidiaries and Affiliates, (the "Company"), which is located at 507 Prudential Road, Horsham, PA 19044. The affiant is authorized to make the statements and representations herein. The Company's business records show that as of July 19, 2004, there was due and payable from Account # [xxx–8465] the amount of $2,780.04. The Company's business records show that this account was opened on 11/1/89. The affiant states that to the best of affiant's knowledge, information and belief there are no uncredited payments against said debt.

*Id.* CFS' corporate representative testified that he did not know how Citibank or NCOP created or maintained their records; whether the entries in the documents were made at or near the time of the events; if someone with knowledge transmitted the information contained in the records; or if the credit card agreement presented applied to Smith's account. *Id.* at 494. The trial court sustained Smith's objection to these documents, concluding that they did not satisfy the business records exception to the hearsay rule under Rule 803(6) or the Uniform Business Records as Evidence Act, 42 Pa.C.S.A. § 6108(b). *CFS*, 15 A.3d at 495.

Following the entry of judgment in Smith's favor, CFS appealed to this Court and we affirmed, finding no abuse of discretion by the trial court in excluding the proffered exhibits. The Uniform Business Records as Evidence Act and Rule of Evidence 803(6) required CFS to establish the "circumstantial trustworthiness" of the documents and have a qualified witness testify in support of the documents, and the record supported the

- 26 -

trial court's conclusion that CFS failed to comply with either requirement. *Id.* at 499-500.

We find no error in the trial court's exclusion of the loan history documents in the case at bar based upon the holding in *CFS*. As stated above, at trial, U.S. Bank presented loan history documents created by Chase through Williams' testimony. He testified that SPS does not originate new loans, but keeps track of payments on existing loans for other companies. Williams stated that SPS employs "a very rigorous loan validation process" when entering loan information into its system to ensure the accuracy of the data obtained from the prior holder of the debt. N.T., 2/25/14, at 25-26. It involves reviewing "the account information, contact history notes, payment history notes[,] … the address, borrower's name, social security number, … [and other] information in reference to that loan." *Id.* at 25. According to Williams, members of SPS' data conversion department "look for irregularities," including any dispute made by the debtor indicating that the information is inaccurate, and by running an amortization schedule of the loan to ensure the numbers "match up" with the prior servicer's numbers. *Id.* at 41-42. Upon completion of the validation process, SPS adopts the prior loan servicer's records as its own. *Id.* at 43-44.

The document presented to the trial court to detail Home Owner's payment history on the loan was created by Chase, and U.S. Bank sought to

admit this exhibit into evidence as its own record. N.T., 2/25/14, at 58-59; *see* Trial Exhibit P-5 at 3. Williams testified to having no knowledge as to how Chase created or maintained its records. N.T., 2/25/14, at 25. U.S. Bank insists that its validation process somehow differentiates the evidence presented in this case from that in **CFS**. Our review of **CFS**, however, reveals that it too provided evidence that it "cross-confirm[ed] [] the information contained in the electronic data provided to CFS on purchase of the account and the information contained in the account statements it sought to admit into evidence at trial." **CFS**, 15 A.3d at 498. In **CFS**, double-checking the records of the prior debt holder was deemed insufficient to overcome the rule against the admission of hearsay.

Moreover, regardless of this similarity with **CFS**, the record in this case fully supports a finding that U.S. Bank's documentary evidence of Home Owner's indebtedness was untrustworthy and incomplete, and thus properly excluded as hearsay. "Hearsay" is an out of court statement offered in court for the truth of the matter asserted. Pa.R.E. 801(c). A writing constitutes a "statement" as defined by Rule 801(a). **See** Pa.R.E. 801(a). Subject to certain exceptions, hearsay is inadmissible at trial. Pa.R.E. 802. One such exception is contained in Rule 803(6), which permits the admission of a recorded act, event or condition if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) **neither the source of information nor other circumstances indicate a lack of trustworthiness.**

Pa.R.E. 803(6) (emphasis added). Furthermore, the Uniform Business Records as Evidence Act states:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b). "As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of

the evidence." **Boyle v. Steiman**, 631 A.2d 1025, 1032-33 (Pa. Super. 1993) (internal citations omitted), *appeal denied*, 649 A.2d 666 (Pa. 1994).

As stated above, Williams had no knowledge of how Chase kept its records and whether those records themselves would have been admissible under Rule 803(6). Williams therefore could not authenticate the documents created by Chase or establish their trustworthiness, and instead attempted to authenticate them as SPS' records created through the aforementioned validation process. Despite the "very rigorous loan validation process" CFS allegedly performed, the payment records provided by U.S. Bank at trial dated back only to February 1, 2008, more than a year after the origination of the loan. N.T., 2/25/14, at 141-42; Trial Exhibit P-5. Williams provided no testimony as to knowledge of any payment activity that occurred between January 25, 2007 and February 1, 2008.

Furthermore, as of February 1, 2008, the document U.S. Bank presented indicated that the principal loan amount was $193,103.71 – over $6000 more than it was at the inception of the loan. **Id.** When asked to explain the growth in principal, Williams had no answer. He testified that Home Owner had several options for paying the loan, including "a negative amortized payment, … an interest only payment, … a [thirty]-year mortgage payment, and … a [fifteen]-year accelerated payment." N.T., 2/25/14, at 80-81. Williams stated that Home Owner "could have selected any" of the options, but that he did not know which she utilized for paying the loan in

question. *Id.* at 81. Home Owner, on the other hand, testified that she had been making payments in full on the loan prior to her default, which would have resulted in a decrease in the amount of the loan's principal. *Id.* at 152.

Additionally, although Williams indicated that a customer dispute would have triggered an investigation into the accuracy of the payments made, he admitted that he did not review the QWR sent to Chase by Attorney Liss on Home Owner's behalf challenging the correctness of the stated amount owed on the loan. N.T., 2/25/14, at 105-06. According to Williams' testimony, SPS never engaged in any additional investigation into the accuracy of the amount purportedly due on the loan apart from reviewing the payment history information it received from Chase, which, as stated above, was incomplete. *See* Trial Exhibit P-5; *see also* Trial Exhibit D-5.

The trial court found that U.S. Bank "failed to present complete, accurate and trustworthy records evincing the actual amount due and owing from [Home Owner] on this loan obligation[.]" Trial Court Opinion, 9/29/14, at 18. The record supports that finding. As such, we discern no abuse of discretion in the trial court's exclusion of the loan history documents U.S. Bank presented as proof of the amount owed by Home Owner on the loan.

## 6. Dismissal of Complaint "With Prejudice"

As its final issue on appeal, U.S. Bank asserts that the trial court erred by dismissing its complaint "with prejudice." U.S. Bank's Brief at 36. U.S. Bank states that the verdict in this case can apply only to the specific defaults alleged, and does not preclude a future action in foreclosure should Home Owner continue to fail to make payments on the mortgage loan, and the dismissal therefore should have been without prejudice.[16] **_Id._** (citing **_Mortgage Electronic Registration Systems v. Dimou_**, 2013 Pa. Dist. & Cnty. Dec. LEXIS 79 (Pa. C.P. 2013), *aff'd without opinion*, 911 EDA 2013 (Pa. Super. April 28, 2014) (unpublished memorandum), *appeal denied*, 105 A.3d 737 (Pa. 2014)). The trial court does not address this question in its 1925(a) opinion.

At the outset, we observe that the trial court's inclusion of language dismissing U.S. Bank's complaint in the verdict entered following a full trial on the complaint is at odds with the purpose of the complaint and the definition of a verdict. "The purpose of the pleadings is to place the defendants on notice of the claims upon which they will have to defend." **_Carlson v. Cmty. Ambulance Servs., Inc._**, 824 A.2d 1228, 1232 (Pa.

---

[16] Continuing in its belief that the trial court dismissed the case based upon a finding that U.S. Bank lacked standing to bring the foreclosure action, U.S. Bank also argues that the dismissal should have been without prejudice to permit "the real party in interest to pursue the action for default." U.S. Bank's Brief at 36. As we have already stated, the trial court did not find that U.S. Bank lacked standing in this matter. Trial Court Opinion, 9/29/14, at 21. Thus, this argument is without merit.

Super. 2003); *see also* Pa.R.C.P. 1019(a) (stating that a pleading shall contain "[t]he material facts on which a cause of action or defense is based … stated in a concise and summary form"). A verdict in favor of a party following trial constitutes a decision on the matters raised in the complaint submitted to the factfinder. *See Fritz v. Wright*, 907 A.2d 1083, 1091 (Pa. 2006); *Smith v. Shields*, 45 A. 417 (Pa. 1900).

The complaint framed the issues for trial, and the matters raised therein have been adjudicated and decided by the trial court. The vitality of the complaint ceased once the verdict was entered. We suppose that it is an accurate statement that following trial and verdict, any complaint is dismissed with prejudice since a party cannot relitigate the issues raised in a complaint that has gone to verdict, and every verdict brings claims raised in a complaint to an end. Thus, in this regard, we conclude that the trial court's dismissal of U.S. Bank's complaint in its order announcing the verdict was surplusage.

In reality, U.S. Bank is asking this Court to answer the question of whether it or its successor in interest may file another foreclosure action against Home Owner on the same mortgage and note for future defaults by Home Owner. We do not (indeed, we cannot) decide the future repercussions of this decision, as it would violate the prohibition against the issuance of an advisory opinion. *See Sedat, Inc. v. Fisher*, 617 A.2d 1, 4 (Pa. Super. 1992) ("An advisory opinion is one which is unnecessary to

decide the issue before the court, and … the courts of this Commonwealth are precluded from issuing such advisory opinions."). Moreover, even if we could decide this question, the issue is insufficiently briefed, as U.S. Bank relies solely upon an unpublished decision of a trial court, which this Court affirmed in an unpublished memorandum without a separate opinion. ***See Reinoso v. Heritage Warminster SPE LLC***, 108 A.3d 80, n.4 (Pa. Super. 2015) (en banc) ("In accordance with § 65.37 of the Superior Court's Internal Operating Procedures, an unpublished memorandum decision of this Court is not to be relied upon or cited by a court or a party in any proceeding, except under limited circumstances that do not exist here.").

## Conclusion

In summary, we find error in the trial court's conclusion that U.S. Bank's post-trial motion was untimely, but need not remand the case for decision on the motion. In all other respects, we affirm the trial court's verdict in favor of Home Owner.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/2015