J-S44011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JENN-CHING LUO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CALIFORNIA CASUALTY | : | No. 1871 EDA 2024 |

Appeal from the Order Entered June 10, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-02008-CT

BEFORE:  NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 15, 2025**

Appellant Jenn-Ching Luo appeals *pro se* from the order granting the motion for summary judgment filed by Appellee California Casualty and denying Appellant's motion for summary judgment in the underlying breach of contract action.  Appellant contends that the trial court erred in granting Appellee's motion for summary judgment because Appellee's expert reports were inadmissible.  Appellant also argues that the trial court erred in concluding that Appellant was required to present expert reports to support his claims.  Lastly, Appellant argues that the trial court erred by denying his motion for summary judgment.  We affirm.

Appellant owns a residential property (the Dwelling) in Spring City, Pennsylvania.  Appellee issued a homeowner's insurance policy to Appellant (the Policy), which provided coverage for the Dwelling.  ***See*** Appellant's Mot.

for Summ. J., Ex. A at 12-52, R.R. at 155a-95a.[1]  The Policy was in effect at all times relevant to this matter.  ***See*** R.R. at 155a.

On May 10, 2020, Appellant submitted an insurance claim to Appellee reporting that, on the evening of March 31 to April 1, 2020, strong winds had damaged the aluminum siding of the Dwelling, exposing the wooden bottom plate[2] and that there was damage to the attached wooden deck.  ***See id.*** at 196a.  Appellee sent Mark Irwin, a general contractor, to inspect the Dwelling. ***See id.*** at 291a.  Mr. Irwin prepared a written report after that inspection. ***See id.***  Mr. Irwin concluded that the wooden deck was "in a deteriorated state and should be replaced."  ***Id.***  He also opined that the aluminum siding on the front of the Dwelling was not damaged by a storm, but rather rotted wooden boards underneath the siding had caused the damage.  ***See id.*** Lastly, he found "numerous holes" in the cedar siding on the right and rear sides of the Dwelling, which he believed were caused by woodpeckers.  ***Id.*** Mr. Irwin's report does not mention the bottom plate or whether steam was leaking from the exhaust pipe of Appellant's clothes dryer.  ***See id.***

After reviewing Mr. Irwin's report, one of Appellee's adjusters concluded that the damage to the aluminum siding on the front of the Dwelling was caused by rotten wooden beams beneath the siding, and that this loss was

_____

[1] We may cite to the reproduced record for the parties' convenience.

[2] "A bottom plate is the horizontal beam on which the studs of a partition rest."  Trial Ct. Order & Op., 6/10/24, at 2 n.2 (citation and quotation marks omitted).

covered under the Policy. *See id.* at 199a. The adjuster further concluded that the damage to the deck and bottom deck was not covered. *See id.* Therefore, Appellee sent Appellant a check for $4,079.86 for the covered damages. *See id.* at 205a.

On April 29, 2020, Appellant sent a letter replying to Appellee's decision to partially deny coverage for his claim. *See id.* at 207a-09a. Therein, Appellant asserted that during Mr. Irwin's inspection of the Dwelling, Mr. Irwin photographed the exhaust pipe and vent for Appellant's dryer. *See id.* at 208a. Appellant argued that steam leaking from this exhaust pipe caused the rot in the bottom plate. *See id.* at 208a-09a; *see also id.* at 256a (Appellant's March 5, 2023 affidavit, in which Appellant averred that his inspection of the dryer's exhaust pipe revealed a leak that allows steam to enter into a cavity within the wall).

Appellee then hired Keith Bergman to assess the damage to the Dwelling. *See id.* at 235a. Mr. Bergman concluded that "[t]he damage to the elevated wood deck is the result of long-term deterioration and not the result of a single weather event." *Id.* at 238a; *see also id.* at 236a (stating that "[c]ertain 2x6 deck boards were deteriorated and compromised" (citation omitted)). He further opined that that the connection between the deck and the Dwelling's "bottom plate failed to include flashing which enabled water to migrate between the boards and rot the [Dwelling] bottom plate." *Id.* at 237a. Lastly, Mr. Bergman observed that there were holes in the cedar siding on the right and rear sides of the Dwelling and a bird flew out of one of the

holes; therefore, he concluded that the damage to the cedar siding was caused by birds.  ***Id.***

Therefore, Appellee confirmed its original decision to deny coverage for the wooden deck because Appellee concluded that long-term deterioration is excluded from coverage under the Policy.  ***See id.*** at 232a.  Appellee also stood by its previous decision to deny coverage for the bottom plate, explaining that the Policy excluded coverage for damaged caused by improper and/or faulty workmanship, and concluding that the failure to include proper flashing was improper and/or faulty workmanship.  ***See id.*** at 233a.  Appellee further concluded that damage to the cedar siding was not covered under the Policy because the Policy excluded damage from birds.  ***See id.***

Appellant then filed the instant action, claiming that Appellee had breached the policy by failing to pay for all of Appellant's claimed damages to the Dwelling.  ***See id.*** at 16a-25a.  Appellant never cashed the $4,079.86 check for the damages Appellee concluded were covered under the Policy. ***See id.*** at 24a, 131a.

The parties eventually filed motions for summary judgment.  ***See id.*** at 124a-305a (Appellant's Mot. for Summ. J., 2/18/24);[3] ***id.*** at 85a-103a (Appellee's Mot. for Summ. J., 3/18/24).  On June 10, 2024, the trial court entered an order and opinion denying Appellant's motion for summary

---

[3] Overall, this was the third motion for summary judgment that Appellant had filed in this matter.

judgment and granting Appellee's motion for summary judgment. *See* Trial Ct. Order & Op., 6/10/24.

Appellant filed a timely notice of appeal. The trial court did not order Appellant to comply with Pa.R.A.P. 1925(b). The trial court issued a Rule 1925(a) opinion adopting its prior order and opinion addressing Appellant's claims. *See* Trial Ct. Op., 7/23/24, at 1.

Appellant raises the following issues on appeal, which we restate as follows:

1. Was Appellant required to present expert opinion to support of his motion for summary judgment and to oppose Appellee's motion for summary judgment?

2. Are the expert opinions that Appellee submitted to support its motion for summary judgment and oppose Appellant's motion for summary judgment admissible?

3. Did the trial court err by denying Appellant's motion for summary judgment and by granting Appellee's motion for summary judgment?

Appellant's Brief at 3.

## Scope of Coverage

Resolving Appellant's claims requires this Court to interpret the Policy and determine what losses are covered and which losses are excluded under the Policy. Appellant asserts that he submitted a claim to Appellee for the rot damage to the wooden deck and the bottom plate of the Dwelling.[4] Appellant's

_____

[4] Appellant also argues that Appellee breached the Policy with respect to windstorm damage to the Dwelling's aluminum siding. *See* Appellant's Brief
*(Footnote Continued Next Page)*

Brief at 27.  Specifically, he contends that that under the Rot Endorsement[5] to the policy, the rot damage to the wooden deck and bottom plate are also covered under the Policy.  *Id.* at 28-31, 33-34.  Appellant argues that the Policy originally excluded coverage for damage caused by either wet rot or dry rot, but the Rot Endorsement removed that exclusion language.  *Id.* at 29-31.  Lastly, Appellant argues that the Policy's exclusion of coverage for loss resulting from faulty workmanship does not apply to the damages claimed. *Id.* at 34-37.  Specifically, Appellant notes that the Policy states: "[h]owever, any ensuing loss to property described in Coverage[] A . . . not precluded by any other provision in this policy is covered." *Id.* at 35 (quoting R.R. at 169a) (emphasis omitted).  Appellant contends that because coverage from loss due to rot is not precluded under the Policy, Appellant's claim for rot damage to the bottom plate is "is always covered no matter if there was faulty workmanship."  *Id.* at 36-37 (emphasis and quotation marks omitted). Appellant concludes that "under the ensuing loss clause, Appellee could not exclude the coverage of the rotted bottom plate.  The ensuing loss clause quickly decides the entire action." *Id.* at 38.

_____

at 27-28, 31.  However, as stated above, although Appellee disagreed with Appellant about the cause of that damage, Appellee concluded the damage was covered under the Policy and issued a payment to Appellant.  *See* R.R. at 199a, 205a.  To the extent Appellant argues that Appellee denied coverage for siding on other sides of the Dwelling, we discuss that issue below.

[5] The full name of this endorsement is "Limited Fungi, Wet or Dry Rot, or Bacteria Coverage."  R.R. at 188a.

Our standard of review for summary judgment is well settled:

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court.
>
> An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.
>
> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Sampathkumar v. Chase Home Fin., LLC*, 241 A.3d 1122, 1144 (Pa. Super. 2020) (citation omitted and formatting altered). Further, "[i]t is well-settled that we may affirm the trial court's order on any valid basis." *Seneca Res. Corp. v. S & T Bank*, 122 A.3d 374, 387 n.13 (Pa. Super. 2015) (citation and quotation marks omitted)).

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Kelly v. Carman Corp.*, 229 A.3d 634, 653 (Pa. Super. 2020) (citation omitted).

Our Supreme Court has explained that

the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court. The interpretation of an insurance contract is a question of law, our standard of review is *de novo*, thus, we need not defer to the findings of the [trial court]. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, a court is required to give effect to that language.

***Donegal Mut. Ins. Co. v. Baumhammers***, 938 A.2d 286, 290 (Pa. 2007)

(citations omitted and formatting altered).

This Court has stated that

our review is guided by certain principles, or canons, of contract interpretation. . . . First, the entire contract should be read as a whole . . . to give effect to its true purpose. Second, a contract must be interpreted to give effect to all of its provisions. Thus, our Court will not interpret one provision of a contract in a manner which results in another portion being annulled. Third, a word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons, such as thwarting the intent of the agreement.

***Toth v. Toth***, 324 A.3d 469, 486 (Pa. Super. 2024) (*en banc*) (citation

omitted).

Further, this Court has explained that an appellant's *pro se* litigant

status does not relieve the litigant of the duty to comply with the Rules of

Appellate Procedure. ***Jiricko v. Geico Ins. Co.***, 947 A.2d 206, 213 n.11 (Pa.

Super. 2008). "Although this Court is willing to liberally construe materials

filed by a *pro se* litigant, *pro se* status confers no special benefit upon the

- 8 -

appellant." ***In re Ullman***, 995 A.2d 1207, 1211-12 (Pa. Super. 2010) (citations omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***U.S. Bank, N.A. v. Pautenis***, 118 A.3d 386, 394 (Pa. Super. 2015) (citations omitted).

The Policy at issue here states, in relevant part:

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

\* \* \*

**SECTION I - PROPERTY COVERAGES**

**A. Coverage A - Dwelling**

1. We cover:

a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling . . . .

\* \* \*

**SECTION I - PERILS INSURED AGAINST**

**A. Coverage A - Dwelling . . . .**

**1.** We insure against risk of direct physical loss to property described in Coverage[] **A** . . . .

**2.** We do not insure, however, for loss:

**a.** Excluded under Section I – Exclusions . . .

\* \* \*

**c.** Caused by:

\* \* \*

(5) Caused by constant or repeated seepage or leakage of water or the presence or condensation of

- 9 -

humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.[6]

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion;[7]

\* \* \*

(g) Birds, vermin, rodents, or insects . . .

\* \* \*

**SECTION I - EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

**B.** We do not insure for loss to property described in Coverage[] **A** . . . caused by any of the following. However, any ensuing loss to property described in Coverage[] **A** . . . not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

---

[6] As modified by the Rot Endorsement. **See** R.R. at 189a.

[7] As modified by the Rot Endorsement. **See** R.R. at 189a.

* * *

**3.** Faulty, inadequate or defective:

* * *

    **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction . . . .

R.R. at 158a-60a, 165a-66a, 168a-69a, 189a.

Here, the trial court did not address Appellant's arguments regarding the scope of coverage under the Policy. However, following our review of the record, we disagree with Appellant's interpretation of the Policy. The record reflects that the Rot Endorsement removes the original Policy's coverage exclusions for damage caused by mold, fungus, wet rot, and dry rot. *Compare id.* at 166a (original Policy language) *with id.* at 189a (Rot Endorsement). However, the coverage provided for in the Rot Endorsement cannot be read in isolation, because as with any contract, we must read the policy as a whole and interpret it to give effect to all of its provisions. *See Toth*, 324 A.3d at 486. The Policy states "any ensuing loss to property described in Coverage[] A . . . not precluded by any other provision in this Policy is covered." R.R. at 169a (some formatting altered). The Policy excludes coverage from loss resulting from, among other things, "wear and tear," "deterioration[,]" "birds," and "[f]aulty, inadequate or defective . . . workmanship[.]" *Id.* at 165a-66a, 169a. Reading these provisions together, the Rot Endorsement means that damage caused by wet rot and/or dry rot is

- 11 -

covered under the Policy, but only **if** no other exclusions in the Policy[8] apply. Accepting Appellant's interpretation of the policy that the "ensuing loss" language would mean that the Policy's exclusions would never apply to a type of loss covered under the Policy.

This Court will not interpret one provision of a contract to annul another portion of that contract. ***See Toth***, 324 A.3d at 486. Further, Appellant has not cited any authority supporting his interpretation of the "ensuing loss" clause. ***See Pautenis***, 118 A.3d at 394 (explaining that this Court will not develop arguments on behalf of a party). Therefore, we interpret the Policy as providing coverage for damage caused by wet rot and/or dry rot only if none of the Policy's other coverage exclusions apply. ***See Baumhammers***, 938 A.2d at 290 (stating that "[w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language" (citation omitted)).

**Necessity of Expert Opinions**

Appellant argues that the trial court erred by concluding that Appellant needed to submit expert opinions in support of Appellant's motion for summary judgment and to oppose Appellee's motion for summary judgment. Appellant's Brief at 25-26, 41-43, 46-54.[9] Appellant contends that expert

_____

[8] Including the exclusions set forth in the Rot Endorsement itself.

[9] We note that although Appellant has divided the argument section of his brief be divided into as many parts as there are questions to be argued, ***see***
*(Footnote Continued Next Page)*

opinion evidence is not necessary in this matter, because his claims involve matters of common knowledge. *Id.* at 25-26. Specifically, Appellant asserts that it is "common knowledge" that rot is caused by fungi. *Id.* at 25 (citing Wikipedia). Additionally, Appellant contends that he did not need to present an expert report to establish that steam leaking from the clothes dryer exhaust pipe damaged the bottom plate because "it is common sense that moisture causes rot. Every average person must be held to a knowledge of these facts." *Id.* at 52. Therefore, Appellant concludes that the trial court erred by concluding that Appellant needed to present expert opinions in support of his motion for summary judgment and to oppose Appellee's motion because the causes of damage to the Dwelling are facts that a jury could comprehend without the assistance of an expert witness. *Id.* at 51-54.

It is well-established that "[t]he employment of testimony of an expert rises from necessity, a necessity born of the fact that the subject matter of the inquiry is one involving special skill and training beyond the ken of the ordinary layman." *Young v. Commonwealth, Dep't of Transp.*, 744 A.2d 1276, 1278 (Pa. 2000) (citations omitted); *see also* Pa.R.E. 702 (governing testimony by expert witnesses). It is well-established that expert testimony

---

Pa.R.A.P. 2119(a), Appellant's arguments for several of these issues appear in multiple sections of his brief and each section contains numerous subsections, which do not relate to the issue raised in that section. While we do not condone Appellant's failure to comply with the Rules of Appellate Procedure, we find that the defects in Appellant's brief does not impede our ability to render meaningful appellate review; therefore, we decline to find waiver on this basis. *See Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1042 (Pa. Super. 2015).

may be presented regarding the cause of damage to a structure. ***See, e.g.***, ***Folkman v. Lauer***, 91 A. 218, 220 (Pa. 1914) (*per curiam*) (expert testimony was permitted regarding the decay of wood used to construct an amusement park pavilion which collapsed); ***Gillingham v. Consol Energy, Inc.***, 51 A.3d 841, 850-52 (Pa. Super. 2012) (experts opined that a stairway collapsed because the bolts that secured it to a building had rusted); ***accord Jemison v. Pfeifer***, 152 A.2d 697, 699-700 (Pa. 1959) (explaining that whether an inspection of a building undergoing demolition would have revealed a latent defect in the construction methods that placed the demolition crew in danger was outside the general knowledge of the jury and was properly the subject of expert testimony). Additionally, "[a]lthough our Supreme Court has not commented on the subject, we generally look at arguments involving citations to Wikipedia with skepticism." ***Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.***, 116 A.3d 87, 95 n.4 (Pa. Super. 2015).

Here, the trial court stated:

> It is the general rule that "expert testimony is necessary when a case presents questions beyond the ken of the average layperson." ***Burlington Coat Factory of Pennsylvania, LLC v. Grace Const. Management Co., LLC***, 126 A.3d 1010, 1021 (Pa. Super. 2015). The issue of causation in the particular circumstances of this case is not obvious, nor is the method of construction required to protect the bottom plate. The average layperson does not possess the training or experience to determine the conditions that must be met to cause a particular structural member to succumb to rot and does not possess the training or experience to differentiate between rot caused by exterior water penetrating to the interior, on the one hand, and rot caused by moist air escaping from between a dryer hose and a dryer vent to an exterior wall, on the other.

- 14 -

. . . [Appellant] asserts that his invocation of logic and reason should be sufficient proof, but [Appellant's] assertion overlooks the technical training and experience relied upon by [Appellee's] expert and [Appellant's] contradicting [Appellee's] expert is not the same as thing as expert opinion itself. It is this court's view that the question whether a clothes dryer leak between a hose and a vent is capable of producing moisture sufficient to destroy the specific bottom plate at issue under the prevailing conditions is a question beyond the ken of the average layperson . . . .

Trial Ct. Order & Op., 6/10/24, at 5-6 (some citations omitted and some formatting altered).

Based on our review of the record, we discern no error of law in the trial court's conclusion that an expert opinion was necessary to resolve the parties' motions for summary judgment. *See Sampathkumar*, 241 A.3d at 1144. Specifically, we agree with the trial court that identifying the cause of damage to the Dwelling "is one involving special skill and training beyond the ken of the ordinary layman." *See Young*, 744 A.2d at 1278; *see also* Pa.R.E. 702; *Folkman*, 91 A. at 220; *Gillingham*, 51 A.3d at 850-52. We decline to rely on Appellant's citation to Wikipedia to conclude that the cause of rot is a matter within the ken of the ordinary layman. *See Rourke*, 116 A.3d at 95 n.4. Therefore, we conclude that Appellant is not entitled to relief on this claim.

**Admissibility of Expert Reports**

Alternatively, Appellant argues if expert opinions are necessary to decide this matter, that the trial court erred by relying on Appellee's expert reports because those reports are inadmissible evidence. Appellant's Brief at 18-24, 43-45, 54-55. First, Appellant contends that these expert reports were

inadmissible because they are hearsay. *Id.* at 44, 54-55. Second, Appellant claims that Appellee's experts are inadmissible because they failed to disclose the facts upon which they based their conclusions. *Id.* at 18-24. Specifically, Appellant argues that Mr. Bergman's conclusion that the connection between the deck and the bottom plate lacked proper flashing is inadmissible because Appellant contends that Mr. Bergman failed to disclose the evidence that he relied on to reach the conclusion. *Id.* at 19-22.[10] Appellant asserts that Appellee denied coverage for his claims for damage to the Dwelling's aluminum siding and the bottom plate based on these reports. *Id.* at 20, 22. Appellant further argues that Mr. Bergman's conclusion that the damage to boards in the Dwelling's wooden deck was the result of long-term deterioration is inadmissible because it is contradicted by the record, specifically the condition of wooden deck as a whole. *Id.* at 23-25. Appellant contends that only some boards in the wooden deck are damaged, and concludes that it is illogical for only some of the boards to have deteriorated over a long period of time while other boards exposed to the same environment have not. *Id.* at 24-25.

---

[10] Additionally, Appellant claims that Mr. Irwin's report concluding the damage to the aluminum siding on the front of the Dwelling is inadmissible for the same reasons. Appellant's Brief at 22-23. As stated above, Appellant's claim that Appellee denied coverage based on Mr. Irwin's report is not supported by the record. Although Appellant and Appellee disagree about the cause of the damage to the aluminum siding on the front of the Dwelling, Appellee concluded that this damage was covered under the Policy and issued a payment to Appellant. *See* R.R. at 199a, 205a.

Our Supreme Court has explained that at the summary judgment stage, the trial court must consider expert reports in the light most favorable to the non-moving party, "**so long as the conclusions contained within those reports are sufficiently supported**, . . . [T]he trial judge must defer to those conclusions, and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact." ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1161 (Pa. 2010) (citation omitted and emphasis added).

Further, this Court explained:

Pennsylvania Rule of Evidence 703 sets forth the proper bases of an expert's opinion testimony:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Pa.R.E. 703. Further, our Court has explained under what circumstances the testimony of an expert witness will be deemed incompetent:

> [E]xpert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

***Gillingham***[, 51 A.3d at 849].

***McEwing v. Lititz Mut. Ins. Co.***, 77 A.3d 639, 649-50 (Pa. Super. 2013) (some citations omitted). Additionally, an expert may rely on his or her

personal observations to form an expert opinion. *See Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1130 (Pa. Super. 2004). Further, when two or more experts examine the same set of circumstances and render different opinions, "the fact that the experts arrive at different conclusions goes to the weight of the evidence, not to its admissibility." *Walsh v. BASF Corp.*, 191 A.3d 838, 845 (Pa. Super. 2018).

Lastly, "arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." *Moranko v. Downs Racing, LP*, 118 A.3d 1111, 1115-16 (Pa. Super. 2015) (*en banc*) (citations omitted and formatting altered).

As stated above, the trial court concluded that expert opinion is necessary to resolve this matter, and the trial court relied on Appellee's expert reports when it granted summary judgment in favor of Appellee. *See* Trial Ct. Order & Op., 6/10/24, at 4-6. However, the trial court did not address the admissibility and/or competency of the expert reports in its June 10, 2024 opinion and order.

First, we conclude that Appellant's argument that Appellee's expert reports are inadmissible hearsay is waived because Appellant did not raise that argument in his response to Appellee's motion for summary judgment. Instead, Appellant objects to the expert reports as hearsay for the first time on appeal. *See Moranko*, 118 A.3d at 1115-16.

Further, based on our review of the record, we discern no error of law by the trial court in considering Appellee's experts' reports. *See*

*Sampathkumar*, 241 A.3d at 1144.  Our review of the record indicates that Mr. Bergman personally visited the Dwelling, where he personally observed and photographed the damaged areas.  *See* R.R. at 235a-55a.  Taken as a whole, it is clear that Mr. Bergman's conclusions that there was no flashing on to the bottom plate to protect and long-term deterioration was the cause of the damage to the wooden deck are based on his personal observations.  *See Reeves*, 866 A.2d at 1130.  Lastly, to the extent that Appellant argues that Mr. Bergman's conclusions about the boards in the wooden deck suffering from long-term deterioration are contradicted by the record, we disagree.  As with Mr. Bergman's conclusions about the bottom plate, his conclusions about the wooden deck are based on his personal observations.  *See* R.R. at 235a-55a.  To the extent that Appellant disagrees with how Mr. Bergman interpreted those observations, this does not affect the admissibility of Mr. Bergman's report.  *See Walsh*, 191 A.3d at 845.  Therefore, because the conclusions of Appellee's experts are sufficiently supported by the record, the courts may not disregard them and must defer to those opinions for summary judgment purposes.  *See Summers*, 997 A.2d at 1161.  For these reasons, we conclude that that Appellant is not entitled to relief on this claim.

**Entry of Summary Judgment**

Lastly, Appellant claims that the trial court erred by entering summary judgment in favor Appellee instead of Appellant because Appellant is entitled to judgment as a matter of law and Appellee failed to establish a genuine dispute of material fact.  Appellant's Brief at 26-40, 43-56.  As discussed

above, Appellant contends that all of the damages to the Dwelling are covered under the Policy and the exclusions that Appellee relied on to deny his claim do not apply. *Id.* at 27-38, 49-50. Next, Appellant, relying on his argument that Appellee's expert reports are inadmissible, claims that, as a result, Appellee failed to establish the existence of a genuine dispute of material fact that would preclude entry of summary judgment in Appellant's favor. *Id.* at 32-33, 36, 40, 44, 48-49, 55. Appellant further contends that Appellant's check for $4,079.86 to replace damaged aluminum siding was a breach of the Policy because Appellee "lowballed" the cost of repairs by excluding the costs of labor and painting. *Id.* at 31-32; *see also id.* at 39 (Appellant asserts the costs of repairing the wooden deck and replacing the siding exceeds $56,000 (citing R.R. at 270a-72a)). Additionally, Appellant claims that Appellee's check only covered the replacement for one side of the Dwelling, even though Appellant submitted a claim for damage on three sides. *Id.* at 32. Lastly, Appellant argues that the trial court erred by entering summary judgment in favor of Appellee because the trial court failed to address Appellant's claims regarding the damaged siding and wooden deck. *Id.* at 56.

> Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (citation omitted and formatting altered). Additionally, the "party

moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issues of material fact." **Dudley v. USX Corp.**, 606 A.2d 916, 918 (Pa. Super. 1992) (citation omitted).

Appellate briefs must conform to the requirements set forth in the appellate rules. **See Ullman**, 995 A.2d at 1211. Moreover, "[i]t is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority." **In re M.Z.T.M.W.**, 163 A.3d 462, 465 (Pa. Super. 2017) (citations omitted); **see also** Pa.R.A.P. 2119(a), (c) (providing that the argument section of an appellate brief shall contain discussion of the issues raised therein and citations to pertinent legal authorities and references to the record). "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." **M.Z.T.M.W.**, 163 A.3d at 465-66 (citations omitted and formatting altered); **see also Pautenis**, 118 A.3d at 394 (explaining that this Court will not develop arguments on behalf of a party).

Here, the trial court explained its denial of Appellant's motion for summary judgment as follows:

> [Appellant's] theory of the case is that moisture from a clothes dryer (that should be fully exhausted to the exterior of the [Dwelling]) has been escaping into an exterior wall (at the connection between the dryer hose and the dryer vent) causing a bottom plate to rot. [Appellant] argues that the rot caused by the

appliance leak is within the scope of insurance coverage because the rotted bottom plate was hidden within the wall and unknown. . . .

[Appellee] directed this court to its evidence that the cause of the rotted bottom plate is faulty construction, specifically, "the connection of the deck to the [Dwelling] failed to include proper flashing, resulting in the bottom plate deteriorating." [Appellee] also argued that [Appellant's] evidence to prove the existence of the dryer exhaust leak and the damage it caused cannot support grant of [Appellant's] motion for summary judgment because "testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury." *Penn Center House, Inc. v. Hoffman*, 553 A.2d 900, 903 (Pa. 1989).

Here, this court finds merit in [Appellee's] arguments. A party is entitled to grant of a motion for summary judgment when "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]" Pa.R.Civ.P. 1035.2(1). An example of such a motion is "a motion supported by a record containing an admission [and b]y virtue of the admission, no issue of fact could be established by further discovery or expert report." Pa.R.Civ.P. 1035.2 (Note). [Appellant's] motion is not of that sort since [Appellant] fails to direct this court to any admissions and the cause of the rotted bottom plate is very much a contested issue of material fact. . . .

Trial Ct. Order & Op., 6/10/24, at 2-3 (footnote and some citations and omitted, some formatting altered).

Next, the trial court explained its decision to grant Appellee's motion for summary judgment as follows:

[Appellee] rests its motion [for summary judgment] on its assertion that expert opinion is required to prove the cause of [Appellant's] loss, that [Appellee] has produced two (2) expert reports to prove the cause of [Appellant's] loss, and that [Appellant] has produced no expert reports.

- 22 -

. . . [Appellant] argues that proof of the cause of the rotted bottom plate need not be made by an expert and that his testimony is sufficient. [Appellant] criticized the expert opinion of [Appellee's] engineer and thereby argued that his testimony is sufficient. *See also* Motion, 2/18/2024, Exhibit 11, p. 1 (Affidavit of Jenn-Ching Luo)[11]. . . .

\* \* \*

Here, this court finds merit in [Appellee's] arguments. The entry of summary judgment is appropriate when the adverse party who will bear the burden of production at trial fails to come forth with evidence capable of proving the facts essential to a cause of action or defense such that there is no issue to be submitted to the jury.

\* \* \*

[Appellee] has produced expert opinion to prove that the bottom plate was rotted by exterior water that should have been blocked by properly installed flashing before it reached the interior of the [Dwelling]. This court finds [Appellant's] criticism of [Appellee's] expert opinion no substitute for [Appellant's] obligation to produce expert opinion as part of his case-in-chief. . . . [Appellant] has thus failed to meet [Appellee's] motion for summary judgment.

*Id.* at 4-6 (some citations omitted and some formatting altered).

First, based on our review of Appellant's brief, we conclude that Appellant has not adequately developed his claim that trial court erred by failing to address Appellant's claims regarding the damaged siding and wooden deck for appellate review. Appellant has failed to develop this claim with any citations to legal authority to support his argument. *See M.Z.T.M.W.*, 163 A.3d at 465-66; *Pautenis*, 118 A.3d at 394. Accordingly, we find that Appellant has waived this claim.

---

[11] R.R. at 256a.

- 23 -

Based on our review of the record, we discern no error of law by the trial court in granting Appellee's motion for summary judgment. ***See Sampathkumar***, 241 A.3d at 1144. As stated above, we concluded that Appellant would be entitled to reimbursement for losses covered under the Policy only if no other exclusions in the Policy apply to those loses; therefore, Appellant is not entitled to judgment as a matter of law under his theory that the exclusions Appellee has cited do not apply.

Next, we conclude that Appellant has failed to establish any genuine issues of material fact regarding the policy exclusions. Here, Appellee presented two expert reports in support of its motion for summary judgment. For the reasons stated above, we conclude that the determining causes of the damage to the wooden deck and the bottom plate involved special skill and training beyond the ken of the ordinary layman. ***See Young***, 744 A.2d at 1278. Here, Mr. Bergman opined that the damage to the wooden deck was the result of long-term deterioration. ***See*** R.R. at 236a, 238a. Mr. Bergman also concluded that the connection between the deck and the bottom plate did not include the proper flashing, and as a result water was able to get to the bottom plate, causing it to rot. ***See id.*** at 237a-38a. Mr. Irwin and Mr. Bergman both concluded that birds had damaged the cedar siding on the right and rear sides of the Dwelling. ***See id.*** at 237a, 291a. All of these causes are excluded from coverage under the Policy. ***See id.*** at 165a-66a, 169a (excluding damaged caused by deterioration, faulty workmanship, or birds). As explained above, Appellant relied solely on his testimonial affidavit to

contest the experts' conclusions and did not present any export reports in his response to Appellee's motion for summary judgment. Therefore, we conclude that Appellant failed to establish any genuine issues of material fact regarding Appellee's denial of these insurance claims. ***See Murphy***, 777 A.2d at 429.

We also conclude that Appellant has not established a genuine issue of material fact regarding the amount Appellee paid Appellant to replace damaged aluminum siding was insufficient. First, as stated above, the damage to the cedar siding on the right side and rear of the Dwelling is not covered under the Policy because that damage was caused by birds. Next, although Appellant asserts that the Appellee's payment of $4,079.86 was a "lowball" amount that excluded associated costs such as labor and painting, Appellant has not cited any provision of the Policy indicating that these costs are covered under the Policy. ***See Pautenis***, 118 A.3d at 394 (explaining that this Court will not develop arguments on behalf of a party). Further, even if we assume those costs are covered under the Policy, Appellant has not presented evidence that is sufficiently specific to create a genuine issue of material fact. Appellant submitted a contractor estimate as an exhibit to his motion for summary judgment, which covers the costs of replacing **both** the wooden deck and aluminum siding. ***See*** R.R. at 270a. The estimate does not provide a breakdown of its costs per item. ***Compare id.*** at 270a-72a (Appellant's estimate provides comparative prices for vinyl siding and aluminum siding but does not otherwise state the cost for each item included

in the estimate) *with id.* at 201a-04a (Appellee's estimate for siding replacement stating costs for each item).  Without comparative price estimates for the replacement of the aluminum siding on the front of the Dwelling, this Court cannot discern whether Appellee's estimate was unreasonable.  Therefore, we conclude that Appellant failed to establish any genuine issues of material fact regarding the amount Appellee paid Appellant for his insurance claim.  *See Murphy*, 777 A.2d at 429.

For these reasons we conclude that Appellant is not entitled to relief on these claims and affirm the trial court's order granting summary judgment in favor of Appellee.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/15/2025

- 26 -